# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JAMARIO ALEXANDER**                                    **CIVIL ACTION**

**VERSUS**                                                        **NO. 18-5019**

**DARREL VANNOY, WARDEN**                         **SECTION "J"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* **28 U.S.C. § 2254(e)(2) (2006)**.[1]

## I.    Factual and Procedural Background

The petitioner, Jamario Alexander ("Alexander"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On September 15, 2011, Alexander was indicted by a Jefferson Parish Grand Jury for the second degree murder of William Kerner and with one count of possession of a firearm by a convicted felon.[3]

The record reflects that, on May 27, 2011, at 8:27 a.m. and 8:46 a.m., a man calling himself "Carlos" called United Cab from 504-287-8932 to request that a taxicab be dispatched to 4121

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 5.

[3]St. Rec. Vol. 7 of 16, Indictment, 9/15/11; Grand Jury Return, 9/15/11.

d'Hemecourt in New Orleans, Louisiana.[4]  According to United Cab's records, the driver, William

Kerner, IV, was dispatched and picked-up the man.

At 9:14 a.m. that morning, Shawn Deggins, called 911 from his home at 204 Adonis Way

in Terrytown to report that a cab driver had been shot and was lying in the street in front of 211

Adonis Way.  Deggins reported that he heard multiple gunshots.  When he looked out of his

window, he saw a man with a gun run down Adonis Way and jump a fence at the back of an empty

lot.  Deggins told police that the man, whom he saw from "the back primarily," was wearing a

black t-shirt, dark pants, and a Hornets cap turned backwards.

Captain Dennis Thornton, the Commander of the Jefferson Parish Sheriff's Office

("JPSO") Homicide Division, arrived to find Kerner lying face down with his United Cab

identification badge next to him.  It would later be discovered by deputies that Kerner was a

"whistleblower" who was helping the New Orleans Mayor's Office investigate corruption in the

New Orleans Taxicab Bureau.  The Dodge van painted with the logo of United Cab was found

three houses down where it collided with a pickup truck.

Based on information obtained from United Cab, the officers determined that the call for

the cab was placed from a cell phone registered to Mary Alexander.  Ms. Alexander later told

police she purchased the phone for her grandson, Jamario Alexander.  The telephone records

showed that Alexander called his girlfriend, Brittney Jones, at 9:11 a.m., which was just minutes

after the shooting, asking her to pick him up in Terrytown.  When Jones picked him up, Alexander

was wearing a black shirt, black jeans, and a Hornets cap.

---

[4]The facts are taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal.  *State v. Alexander*, 118 So.3d 1138, 1143-1146 (La. App. 5th Cir. 2013); St. Rec. Vol. 6 of 16, 5th Cir. Opinion, 12-KA-807, pp. 3-9, 5/16/13.

When Jones and Alexander arrived at her home in Algiers, Alexander immediately discarded his t-shirt and hat in a trash bag in her kitchen. He also emptied the clip of his gun which only had a few remaining bullets. After Alexander left Jones's house, he texted her to say that his phone and gun were behind her sofa. He later returned to Jones's house to retrieve those items.

JPSO deputies were able to track Alexander through his cell phone activity. He was arrested while hiding in an apartment in which the deputies found a Smith and Wesson 9-mm handgun, which as it turned out was not the murder weapon. After his arrest, the deputies determined that Alexander had two prior felony convictions in Orleans Parish. In 2005, he pleaded guilty to distribution of cocaine, and in 2006, he pleaded guilty to possession of cocaine.

In his second statement to police after his arrest, Alexander told officers that, on the day of the murder, his mother dropped him off at his grandmother's house on d'Hemecourt where he called for a cab to pick him up a few houses down. He directed the cab driver to Adonis Way, even though he did not know anyone on that street. Alexander stated that he intended to "skip out" on the fare, but when the driver asked for the money, he panicked and shot at the driver multiple times. The driver exited the vehicle through the driver's side door, and Alexander climbed out of the same door. Alexander ran down the street and jumped a fence behind the houses and walked toward Terrytown, where he had his girlfriend pick him up.

Alexander was tried before a jury on May 8 through 10, 2012, and found guilty as charged on both counts.[5] On May 17, 2012, the Trial Court denied Alexander's motion for a new trial.[6]

---

[5] St. Rec. Vol. 7 of 16, Trial Minutes, 5/8/12; Trial Minutes, 5/9/12; Trial Minutes, 5/10/12; Jury Verdict (Count 1), 5/10/12; Jury Verdict (Count 2), 5/10/12.

[6] St. Rec. Vol. 7 of 16, Sentencing Minutes, 5/17/12; Motion for New Trial, 5/16/12; St. Rec. Vol. 6 of 16, Sentencing Transcript, p. 8, 5/17/12.

After waiver of legal delays, the Court sentenced Alexander to consecutive terms of life in prison for second degree murder and 20 years for possession of a weapon, each to be served without benefit of parole, probation, or suspension of sentence.[7]

On June 27, 2012, Alexander's counsel filed a second motion for new trial suggesting that the victim may have been killed in connection with his role in the cab bureau investigation.[8] Following a hearing on September 12, 2012, the state trial court denied the motion.[9]

On direct appeal, Alexander's appointed counsel asserted two errors:[10] (1) the trial court erred when it denied the motion for new trial based on newly discovered evidence, and in light of the insufficient evidence to support the felon in possession conviction; and (2) the trial court erred when it denied the motion for mistrial or failed call for a new jury panel after the potential jurors heard the victim's daughter scream at the defendant in the courtroom.  Alexander filed two *pro se* supplemental briefs asserting the following claims:[11] (1) the evidence was insufficient to support the second degree murder verdict; (2) he was denied the right to testify; (3) he was denied the right to present a defense because of funding issues; (4) he was subjected to an unreasonable arrest; (5) the out-of-court identification process was unconstitutional and the in-court identification was not

---

[7]St. Rec. Vol. 7 of 16, Sentencing Minutes, 5/17/12; St. Rec. Vol. 6 of 16, Sentencing Transcript, 5/17/12.

[8]St. Rec. Vol. 7 of 16, Motion for New Trial, 6/27/12.  The direct appeal was temporarily remanded to allow the state trial court to rule on this motion.  St. Rec. Vol. 12 of 16, 5th Cir. Motion to Remand, 12-KM-546, 7/3/12; 5th Cir. Order, 12-KM-546, 7/6/12.

[9]St. Rec. Vol. 7 of 16, Minute Entry, 9/12/12; St. Rec. Vol. 6 of 16, Hearing Transcript, 9/12/12.

[10]St. Rec. Vol. 6 of 16, Appeal Brief, 12-KA-0807, 11/7/12.

[11]St. Rec. Vol. 6 of 16, Pro Se Supplemental Appeal Brief, 12-KA-807, 1/7/13; Supplemental Pro Se Brief, 12-KA-0807, 4/9/13.

4

reliable; and (6) he was denied a fair trial because of biased jurors, and the trial court's denial of the mistrial was an abuse of discretion.

On May 16, 2013, the Louisiana Fifth Circuit affirmed Alexander's convictions and sentences finding no merit in the claims asserted by counsel and in three of the claims asserted *pro se* by Alexander.[12]  The Court also specifically held that Alexander's third claim asserting insufficient funds to conduct DNA testing was procedurally barred for lack of a contemporaneous objection, and otherwise, was without merit.  The Court also found that Alexander's fourth and fifth claims of unlawful arrest and improper identification processes also were procedurally defaulted and not preserved for appeal.

The Louisiana Supreme Court denied Alexander's related writ application on January 10, 2014, without stated reasons.[13]  Alexander's convictions and sentences were final 90 days later, on April 10, 2014, because he did not file for review with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for *certiorari* with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

Almost one year later, on April 2, 2015, Alexander signed and submitted to the state trial court an application for post-conviction relief asserting four grounds for relief:[14] (1) the state trial court abused its discretion in failing to sever the counts; (2)(a) he was denied effective assistance

---

[12]*Alexander*, 118 So.3d at 1138; St. Rec. Vol. 6 of 16, 5th Cir. Opinion, 12-KA-807, 5/16/13.  The Court noted that the state trial court failed to impose a mandatory fine and declined to correct the issue.

[13]*State v. Alexander*, 130 So.3d 320 (La. 2014); St. Rec. Vol. 14 of 16, La. S. Ct. Order, 2013-KO-1454, 1/10/14; La. S. Ct. Writ Application, 13-KO-1454, 6/19/13 (dated 6/14/13); La. S. Ct. Letter, 2013-KO-1454, 6/19/13.

[14]St. Rec. Vol. 9 of 16, Application for Post-Conviction Relief, 4/6/15 (metered 4/2/15).

of trial counsel where counsel failed to investigate the other suspect, the cars seen leaving the scene, the cab industry corruption, and the gun found in the closet, failed to move to sever the counts, and failed to request a gun residue test or hire a crime scene expert; (2)(b) he was denied effective assistance of counsel on appeal when counsel failed to challenge the trial court's failure to sever the counts; (2)(c) the cumulative effect of the ineffective assistance of trial and appellate counsel violated his rights; (3) Louisiana law on non-unanimous jury verdicts is unconstitutional; and (4) he was denied due process by the discriminatory grand jury pool selection practices.

On July 28, 2015, the state trial court denied relief finding that the first claim was procedurally barred under La. Code Crim. P. art. 930.4(C).[15]  The Court also held that claims two, three, and four were procedurally barred under La. Code Crim. P. art. 930.4(B).  The Court further found no merit in the ineffective assistance of counsel claims under *Strickland v. Washington*, 466 U.S. 668 (1984).

On September 29, 2015, the Louisiana Fifth Circuit denied Alexander's related writ application finding no error in the trial court's order.[16]  On February 17, 2017, the Louisiana Supreme Court denied Alexander's subsequent writ application finding no error in the procedural dismissal of his claims under La. Code Crim. P. art. 930.4 or the denial of relief for ineffective assistance of counsel under *Strickland*.[17]

---

[15]St. Rec. Vol. 11 of 16, Trial Court Order, 7/28/15; St. Rec. Vol. 10 of 16, State's Response, 6/18/15; St. Rec. Vol. 9 of 16, Trial Court Order, 4/29/15.

[16]St. Rec. Vol. 13 of 16, 5th Cir. Order, 15-KH-563, 9/29/15; 5th Cir. Writ Application, 15-KH-563, 9/11/15 (dated 9/2/15).

[17]*State ex rel. Alexander v. State*, 211 So.3d 1153 (La. 2017); St. Rec. Vol. 11 of 16, La. S. Ct. Order, 2015-KH-2024, 2/17/16; St. Rec. Vol. 15 of 16, La. S. Ct. Writ Application, 15-KH-2024, 11/3/15 (dated 10/28/15); La. S. Ct. Letter, 2015-KH-2024, 11/3/15; St. Rec. Vol. 16 of 16, La. S. Ct. Writ Application (continued), 15-KH-2024, 11/3/15 (dated 10/28/15).

## II.     <u>Federal Petition</u>

On June 12, 2018, after correction of certain deficiencies, the clerk of this Court filed Alexander's federal petition for habeas corpus relief in which he asserted the following grounds for relief:[18] (1) the state trial court abused its discretion by denying severance of the offenses; (2)(a) he was denied effective assistance of counsel when trial counsel failed to investigate the other suspect, the cars seen leaving the scene, the cab industry corruption, and the gun found in the closet, failed to move to sever the counts, and failed to request a gun residue test or hire a crime scene expert; (2)(b) he was denied effective assistance of counsel on appeal when counsel failed to challenge the trial court's failure to sever the counts; (2)(c) the cumulative effect of the ineffective assistance of trial and appellate counsel violated his rights ; (3) the non-unanimous verdict rule in Louisiana is unconstitutional; and (4) the state procedure for selection of grand jury pools has a discriminatory effect.

The State filed a response in opposition to Alexander's petition asserting that the petition was not filed timely and that claims one, three, and four are procedurally barred from review.[19] Alexander replied to the State's opposition response asserting that his untimeliness should be excused, because his efforts to obtain inmate legal assistance in the prison resulted in the delayed filing of his federal petition.[20]

---

[18]Rec. Doc. No. 5.

[19]Rec. Doc. No. 18.

[20]Rec. Doc. No. 19.

III.    **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[21] applies to this petition, which is deemed filed in this Court on May 11, 2018.[22]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State asserts that Alexander's petition was not timely filed under the AEDPA and that three of his claims are in procedural default.  While the record supports both defenses, for the following reasons, the Court finds that Alexander's federal habeas petition was not timely filed and must be dismissed with prejudice for that reason.

---

[21]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes are effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[22]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  As aptly noted by the State, and not challenged by Alexander, his original, unsigned federal petition was metered for mailing to this Court on May 11, 2018.  There is nothing in the record nor anything offered by Alexander to warrant reliance on the typed date of February 15, 2018, as relevant to his presentation of the pleadings to prison officials for mailing to this Court or to establish that anything was mailed to the State on that as suggested in the pleading.  The May 11, 2018, mailing date of the original, deficient petition is the earliest date appearing in the record on which Alexander could have presented his pleadings to prison officials for mailing.  Nevertheless, even if February 15, 2018 is considered to be the filing date under the mailbox rule, it does not change the fact that Alexander filed his petition more than one year after his conviction was final based on the calculation addressed later in this report.

## IV.    <u>Statute of Limitations</u>

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[23]  *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001).  As stated above, Alexander's conviction was final under federal law on April 10, 2014, which was 90 days after the Louisiana Supreme Court denied his post-appeal writ application.  Pursuant to § 2244, Alexander had one year from that date, or until April 10, 2015, to timely file a federal application for habeas corpus relief which he did not do.  Thus, literal application of the statute would bar Alexander's petition as of that date unless he is entitled to tolling as provided for under the AEDPA.

### A.    <u>Statutory Tolling</u>

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation.  *See* 28 U.S.C. § 2244(d)(2).  In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements,

---

[23]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of-

    A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

    C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.  28 U.S.C. § 2244(d).

such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-08 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006). The Court has applied this rule in presenting the procedural history recited above.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999)) (finding that a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (finding that a state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. 214 (finding that a motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

In addition, efforts like those made by Alexander to obtain copies of state court record documents do <u>not</u> constitute other collateral review for purposes of the AEDPA tolling calculation. *See Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); *Brown v. Cain*, 112 F. Supp.2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002) (Vance, J.); *Jones v. Johnson*, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather support and transcripts); *Grayson v. Grayson*, 185 F. Supp.2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling).

In Alexander's case, the AEDPA filing period began to run on April 11, 2014,[24] the day after his conviction and sentence were final under federal law. The one-year AEDPA filing period continued to run from that date for 356 days, until April 2, 2015, when Alexander signed and submitted his application for post-conviction relief to the state trial court. The one-year limitations period remained tolled during the pendency of that proceeding until February 17, 2017, when the Louisiana Supreme Court denied the related writ application.

The AEDPA one-year limitations period began to run again the next day, February 18, 2017, and did so for the remaining nine days, until Monday, February 27, 2017,[25] when it expired.

---

[24]In its opposition response, the State indicates that the limitations period began to run on April 10, 2014. Rec. Doc. No. 18, p. 19. That date, however, was the day Alexander's state conviction was final. The limitations period would begin the next day. This error by the State perpetuated a one-day calculation error throughout its response which nevertheless does not alter the conclusion that Alexander's federal petition was not timely filed.

[25]The last day was Sunday, February 26, 2017. The deadline therefore fell to the next business day, Monday, February 27, 2017. *See* La. Code Crim. P. art. 13; Fed. R. Civ. P. 6.

Alexander had no properly filed state post-conviction or other collateral review pending in any court during that period. The Court further notes that Alexander had no such filings in the state courts for an additional 437 days between February 28, 2017 (the day after the end of the AEDPA one-year limitations period) and May 11, 2018,[26] when Alexander is deemed to have filed his federal petition under the applicable mailbox rule. Thus, Alexander allowed a total of 802 days, or two years and almost three months, to run without a state court pleading to interrupt the AEDPA one-year limitations period and without having filed a federal petition for habeas corpus relief.

For these reasons, Alexander's federal petition deemed filed on May 11, 2018, was filed over one year and two months <u>after</u> the AEDPA filing period expired on February 27, 2017. Alexander's federal petition was not timely filed and should be dismissed with prejudice for that reason.

**B.    <u>No Equitable Tolling</u>**

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 419; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *see Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).

---

[26]As noted previously, the untimely filing of Alexander's petition is not impacted even if the Court were to consider the petition's typed date of February 15, 2018, as the filing date under the mailbox rule.

Equitable tolling has only been extended under extraordinary circumstances outside the control of the petitioner. *See Holland v. Florida*, 560 U.S. 631, 652-53 (2010) (finding that equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (finding that equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (finding that tolling was warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quotation omitted) ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (finding that tolling is not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (finding that State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended the deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

Alexander has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling to the § 2244(d) calculation. Alexander's claim that he was delayed by inmate counsel or the process to obtain assistance from inmate counsel is

unavailing. The federal courts in this Circuit have repeatedly recognized that the alleged ineffective assistance and even unavailability of inmate counsel is not a basis for equitable tolling. *See Cantu-Tzin*, 162 F.3d at 300; *Puderer v. Vannoy*, No. 17-324, 2018 WL 1319023, at \*9 (E.D. La. Jan. 26, 2018), *report adopted*, 2018 WL 1287621, at \*1 (E.D. La. Mar. 12, 2018) (citing, *Reed v. Keith*, No. 13-1505, 2014 WL 940587, at \*4 (W.D. La. March 11, 2014), *Manning v. Warden, Claiborne Parish Detention Center*, No. 12-2753, 2013 WL 596348, \*5 n.3 (W.D. La. Jan. 22, 2013), *report adopted*, 2013 WL 596345 (W.D. La. Feb. 15, 2013), *aff'd sub nom.*, *Manning v. Sumlin*, 540 F. App'x 46 (5th Cir. 2013)). Similarly, the United States Fifth Circuit has made it clear that a lack of knowledge of the law, including the AEDPA filing period, however understandable it may be, does not justify equitable tolling. *Fierro v. Cockrell*, 294 F.3d 674 (5th Cir. 2002) (citing *Fisher*, 174 F.3d at 714 ("[I]gnorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.")); *see also Felder v. Johnson*, 204 F.3d 168, 172 (2000). Moreover, a prisoner's *pro se* status also does not constitute rare and exceptional circumstances warranting equitable tolling. *See*, *e.g.*, *Felder*, 204 F.3d at 171-72; *accord Gonzales v. Wilkinson*, 269 F. App'x 481, 486 (5th Cir. 2008) (the fact that petitioner did not have assistance of counsel for his post-conviction briefing does not warrant equitable tolling). The record here supports no basis for the extraordinary remedy of equitable tolling.

Alexander's federal petition deemed filed on May 11, 2018, was not timely filed within the AEDPA statute of limitations. The petition should be dismissed with prejudice as time-barred.[27]

---

[27]The Court further notes that the United States Supreme Court's holdings in *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Trevino v. Thaler*, 569 U.S. 413, 133 S. Ct. 1911 (2013), do not provide a basis for review of Alexander's untimely filed federal petition or his ineffective assistance of trial counsel claims. In *Martinez*, the Court held that a state court imposed "'procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" *Trevino*, 133 S. Ct. at 1914 (quoting *Martinez*, 566 U.S. at 17) (emphasis added). The bar to review at issue here arises from Alexander's failure to meet the federal limitations deadline under the

14

V.    **Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Jamario Alexander's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[28]

New Orleans, Louisiana, this 30th day of January, 2019.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

AEDPA.  The *Martinez* and *Trevino* decisions do <u>not</u> address or provide an excuse for the untimely filing of a federal habeas petition.  *See Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the *Martinez* rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); *Smith v. Rogers*, No. 14-0482, 2014 WL 2972884, at * 1 (W.D. La. Jul. 2, 2014); *Falls v. Cain*, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun. 13, 2014) (Order adopting Report).  These cases also do not constitute new rules of constitutional law made retroactive on collateral review to start a new one-year filing period under the AEDPA.  *See In re Paredes*, 587 F. App'x 805, 813 (5th Cir. 2014) (". . . the Supreme Court has not made either *Martinez* or *Trevino* retroactive to cases on collateral review, within the meaning of 28 U.S.C. § 2244."); *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012).  Thus, neither *Martinez* nor *Trevino* provide Alexander relief from the untimeliness of his federal petition.

[28]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.